UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RODRIGO GUTIERREZ ROMO,

Petitioner,

v.

CHRISTOPHER CHESTNUT, Warden of the California City Detention Facility, SERGIO ALBARRAN, Field Office Director for the San Francisco Field Office of ICE Enforcement and Removal Operations; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; DAVID VENTURELLA, Acting Director for U.S. Immigration and Customs Enforcement; TODD BLANCHE, Acting Attorney General of the United States and head of the Department of Justice, acting in their official capacities,

Respondents.

No. 1:26-cv-03449 KES FJS (HC)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Doc. 1

This habeas action concerns the detention of petitioner Rodrigo Gutierrez Romo, a noncitizen who was detained in September 2025 under 8 U.S.C. § 1226(c), based on a 2015 conviction for which he served less than 120 days in jail over a decade ago. Petitioner suffers from multiple serious medical conditions, including throat cancer. For the reasons explained

below, the Court finds that petitioner's detention violates due process. The petition for writ of habeas corpus is therefore granted.

**I. Background**

Petitioner Rodrigo Gutierrez Romo was born in Mexico in 1968, and he became a lawful permanent resident in 1989. Doc. 1 at ¶ 21. He is a father to four children, all of whom are U.S. citizens. *Id.* ¶ 22. To support his family, he worked for many years in various physically demanding jobs. *Id.* ¶ 23. In 2009, his right hand was severely injured while operating heavy machinery, and he can now use only two fingers on that hand. *Id.* Since 2015, he has lived with his parents, sister, and brother-in-law, and he and his sister shared the responsibility of caring for his parents. *Id.* ¶ 24.

Petitioner has two convictions from 2015, one for inflicting corporal injury on a spouse in violation of California Penal Code § 273.5(a) and one for manufacturing honey oil in violation of California Health and Safety Code § 11379.6(A). *Id.* ¶ 3. He served a combined jail sentence of 120 days for these offenses. *Id.*

Petitioner suffers from multiple serious medical conditions. *Id.* ¶¶ 25–26. In 2022, petitioner was diagnosed with throat cancer. *Id.* ¶ 25. To treat the cancer, he endured thirty-six sessions of chemotherapy and thirty-six sessions of radiation. *Id.* He suffered radiation burns on the side of his neck, lost his teeth, lost the ability to produce saliva in the back of his mouth, and his hearing and vision were weakened. *Id.* Then, in 2025, petitioner suffered two strokes. *Id.* ¶ 26. In addition to these issues, petitioner also suffers from chronic pain, chronic obstructive pulmonary disease, chronic back pain from degenerative spinal disease, osteoarthritis, hypertension, gastroesophageal reflux disease, and anxiety and depression. *Id.*

In July 2025, petitioner took a two-week trip to Mexico. *Id.* ¶ 30. Upon his return, Customs and Border Patrol ("CBP") agents detained him and subjected him to secondary inspection for an "admissibility review." *Id.* The CBP agents confiscated petitioner's passport and lawful permanent resident card and ordered petitioner to report to an Immigration and Customs Enforcement ("ICE") office in Los Angeles, California. *Id.*

On September 16, 2025, petitioner reported to ICE as required, and ICE agents arrested

him. *Id.* ¶ 31. The Department of Homeland Security ("DHS") charged petitioner as inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) due to his 2015 conviction for manufacturing honey oil. *See* Doc. 10-1. Section 1182(a)(2)(A)(i)(II) renders inadmissible "any alien convicted" for violating "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(A)(i)(II); *People v. Lebeck*, No. H045329, 2019 WL 6338134, at *6 (Cal. Ct. App. Nov. 27, 2019) (explaining that honey oil is a concentrated form of marijuana, which is a controlled substance). Section 1226(c)(1)(A) mandates the detention "any alien" who is "inadmissible by reason of having committed any offense covered in section 1182(a)(2)." 8 U.S.C.A. § 1226(c)(1)(A).

DHS served petitioner with a notice to appear for removal proceedings. *See* Doc. 10-1 at 5–8. DHS subsequently superseded the original charge of inadmissibility with a charge that he is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) for manufacturing phenylacetone in violation of California Health and Safety Code § 11379.6(a).[1] *See id.* at 3. Petitioner is currently detained at California City Detention Center. *See* Doc. 1 at ¶ 31.

Since about February 1, 2026, petitioner has been confined to medical segregation. Doc. 1 at ¶¶ 35–36. Petitioner has degenerative spinal disease, severe muscle spasms, and only two functioning fingers on his right hand, and he asserts that the process for leaving his cell is so painful that he has stopped asking to leave. *Id.* ¶ 36. Any time he leaves the cell, he must crouch and squat backwards to place his hands through an opening in the door so that officers can handcuff him. *Id.* Respondents do not dispute petitioner's assertion that the shower in his cell does not work, and the only way he is able to bathe himself is by taking "bird baths" in his sink. *Id.* ¶ 37.

Petitioner's health has significantly deteriorated while in ICE custody. Since he arrived at California City, petitioner has suffered two more strokes. *Id.* ¶ 40. Respondents do not dispute petitioner's assertion that, after the first stroke, "staff checked his blood pressure and administered an EKG but provided no further treatment; he was transported to Adventist Hospital

[1] Petitioner disputes that he was convicted of manufacturing phenylacetone. Doc. 1 at ¶ 48.

for a CT scan two days later."[2] *Id.* Nor do they dispute that, "[a]fter the second [stroke], . . . he waited two days to see a nurse, was given no wound care supplies, and was forced to cover an open wound with shrink wrap from his dinner packaging." *Id.* Doctor Kate Sugarman, a medical volunteer with New York Lawyers for the Public Interest's ("NYLPI's") Medical Providers Network, reviewed California City's records and concluded that petitioner's case "is the most egregious case of delayed care for life threatening medical conditions that I have seen to date." Doc. 15-4, Sugarman Decl. at ¶ 8.

Respondents also do not dispute petitioner's assertions that medical care for other conditions has been either significantly delayed or outright denied. *See* Doc. 1 at ¶ 41. "He requested evaluation of a growing throat mass that is making it increasingly difficult for him to speak and swallow, but California City staff told him that he would have to wait months." *Id.* "Although he was later informed that he would see both an oncologist and a neurologist, those appointments have not happened." *Id.* "Detention staff discontinued or inconsistently administered critical medications, including methocarbamol and tizanidine, leaving him with severe muscle spasms and unmanaged pain." *Id.* "He has repeatedly been deprived of access to his prescribed inhaler for COPD, which at one point caused his oxygen levels to drop to 77%—a life-threatening level—requiring emergency hospitalization." *Id.* "And he has been denied basic orthopedic accommodations, including a cane and prescribed supportive footwear for his degenerative spinal condition, leaving him in unmanaged pain and at risk of further injury." *Id.*

On January 23, 2026, an immigration judge held a bond hearing for petitioner. Doc. 1-1, Wagner Decl., Ex. E. The immigration judge reviewed the record, heard testimony from petitioner, acknowledged his prior convictions, and concluded that petitioner was neither a flight risk nor a danger. *Id.* The immigration judge concluded that if he had the authority, he would release petitioner on the statutory minimum bond of $1,500. *Id.* He stated, "I spent more time on this than I have on any bond hearing in recent memory." *Id.* "I would grant him bond, and

---

[2] Respondents state only that "Petitioner's records indicate that he has consistently received medical treatment and care from doctors." Doc. 10 at 6. They do not specifically dispute petitioner's allegations that his medical care was delayed and inadequate.

I'm saying that for a reason." *Id.* "If [this case] goes up on appeal and an appellate court finds he's eligible for bond, I can tell you right now I would set a $1,500 bond, and I'll say this during a rehearing[.]" *Id.* "Bond is denied not on merits, but on eligibility." *Id.* The immigration judge acknowledged petitioner's severe medical condition, stating: "I'm not a doctor, but I can tell something's wrong with him." Doc. 1-1, Wagner Decl., Ex. E. "Talking to him, you can tell he looks weak." *Id.* "I don't think this is his normal state of being." *Id.* "One worries about the medical care he's getting." *Id.*[3]

Petitioner filed a petition for writ of habeas corpus, arguing that his detention violates substantive and procedural due process. Doc. 1. Respondents filed a response, Doc. 10, and petitioner filed a reply, Doc. 11. Petitioner subsequently filed two notices addressing the worsening of his medical condition while in detention, *see* Docs. 13, 16, and a motion to expedite, Doc. 15.

## II. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A habeas petitioner must prove by a preponderance of the evidence that he is entitled to relief. *See Davis v. Woodford*, 384 F.3d 628,

---

[3] Petitioner's removal proceedings are unlikely to conclude in the near future. Petitioner is currently seeking to vacate his prior convictions. Doc. 1 at ¶ 47. Petitioner also moved to terminate his removal proceedings on the ground that his prior conviction does not qualify under 8 U.S.C. § 1182(a)(2)(A)(i)(II). *Id.* ¶ 48. The immigration judge denied petitioner's motion to terminate, *see* Doc. 10-1 at 1, but petitioner intends to appeal that ruling, *see* Doc. 1 at ¶¶ 50–51. Petitioner also intends to challenge the government's assertion that he was convicted of manufacturing phenylacetone. *Id.* ¶ 48. Petitioner has applied for relief from removal, including cancellation of removal for permanent residents, withholding of removal, and asylum. *Id.* ¶ 49. Since he has been detained, petitioner has twice requested humanitarian parole, but ICE had not responded to those requests as of the date of the petition. Doc. 1 at ¶ 45.

638 (9th Cir. 2004).

**III. Discussion**

In *Demore v. Kim*, the Supreme Court upheld 8 U.S.C. § 1226(c) on a facial challenge. *Demore v. Kim*, 538 U.S. 510, 523 (2003). The Court explained that Congress enacted that provision because, in many cases, noncitizens with qualifying criminal convictions failed to appear for their proceedings or committed further crimes while their removal proceedings were pending. *See id.* at 518–20; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (identifying prevention of flight and danger to the community as the two legitimate regulatory goals of immigration detention). *Demore* emphasized that in the "majority of cases," § 1226(c) detention "lasts for less than . . . 90 days" and that in the 15% of cases involving appeals, that additional process "takes an average of four months." *Id.* at 529. *Demore* rejected the petitioner's claim that it was unconstitutional to detain him for this "brief period." *Id.* at 523.

But "[d]ue process protections do not disappear simply because mandatory detention under Section 1226(c) is at least initially permissible." *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1079 (N.D. Cal. 2024). *Demore* rejected a facial challenge to § 1226(c), and to prevail on such a challenge, a plaintiff must show that a statute is "unconstitutional in every conceivable application." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). In contrast, an as-applied challenge requires a plaintiff to show only that "the application of the statute to a specific factual circumstance" is unconstitutional. *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011).

As other courts have explained in considering *Demore*, its conclusion that § 1226(c) is constitutional in some of its applications "does not mean that the Court does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to [§ 1226(c)] detention . . . ." *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022); *see also German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 208–10 (3d Cir. 2020) (noting that *Demore* involved a facial challenge and did not foreclose as-applied challenges); *Black v. Decker*, 103 F.4th 133, 149 & n.22 (2d Cir. 2024). Petitioner brings an as-applied substantive due process challenge to his detention based on his unique circumstances; he argues that his detention

has become excessive in relation to its purpose given his serious medical issues, the lack of adequate care in detention, and the fact that an immigration judge has determined that he does not pose a risk of flight or danger to the community, among other things. *Demore* did not address such an as-applied challenge.

Under the Due Process Clause, a person may not be punished unless he is tried and found guilty of a crime. *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979) (citing *Ingraham v. Wright,* 430 U.S. 651, 671–672 n. 40, 674 (1977); *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 165–167, 186 (1963); *Wong Wing v. United States,* 163 U.S. 228, 237 (1896)). This principle applies equally to citizens and non-citizens. *Compare Ingraham,* 430 U.S. at 671–672 n. 40, 674, *with Wong Wing,* 163 U.S. at 237–38. That is so because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.[4]

Civil detention violates substantive due process if it "becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021). Civil detention may become excessive in relation to its purpose if it lasts too long or if the conditions amount to punishment. *See id.* (""It is undisputed

---

[4] Respondents argue that petitioner should be required to exhaust his administrative remedies by requesting a *Matter of Joseph* hearing with an immigration judge to determine whether he is subject to 8 U.S.C. § 1226(c). *See* Doc. 10 at 1–3. At a *Matter of Joseph* hearing, a "detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." *Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003). This exhaustion requirement is prudential rather than jurisdictional, and it may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Petitioner argues that his detention violates substantive and procedural due process, and the immigration court does not have jurisdiction to address such constitutional issues. *See Montoya Echeverria v. Barr*, No. 20-CV-02917-JSC, 2020 WL 2759731, at *6 (N.D. Cal. May 27, 2020) (citing *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995)). "When, as here, the [] claim is a constitutional one beyond the agency's competence to resolve, [] prudential exhaustion [] does not bar review." *Gagik T. v. Chestnut*, No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *2 (E.D. Cal. June 25, 2026). The court waives prudential exhaustion and proceeds to the merits.

that at some point, pretrial detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." (quoting *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)); *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) ("At a bare minimum, [] an individual detained under civil process—like an individual accused but not convicted of a crime—cannot be subjected to conditions that 'amount to punishment.'" (quoting *Bell,* 441 U.S. at 536)).

In *Doe v. Becerra*, the court articulated five factors to consider in determining whether the length and conditions of confinement in an immigration detention center violate substantive due process:

> (1) the length of detention and whether it is excessive in relation to its regulatory purpose;
>
> (2) the government's contribution to any delay;
>
> (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger;
>
> (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and
>
> (5) the conditions of detention and how they compare to conductions under which pretrial criminal detainees or people convicted of crimes are held.

*Doe v. Becerra*, 723 F. Supp. 3d 688, 692 (N.D. Cal. 2024); *see also Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1179 (E.D. Cal. 2025) (relying on these factors). The Court finds these factors instructive and employs them here.

**a. Conditions of Confinement**

First, the conditions of petitioner's confinement weigh strongly in favor of finding a due process violation.[5] It is undisputed that petitioner has suffered two strokes in detention, and that,

---

[5] Relying on *Pinson v. Carvajal*, 69 F.4th 1059 (9th Cir. 2023), respondents argue that a detainee cannot challenge his conditions of confinement in a habeas case. *See* Doc. 6 at 8–9. *Pinson* does not foreclose petitioner's claim. The Court in *Pinson* noted: "We conclude that [the petitioner] has failed to allege facts to support his legal contention [that his conditions of confinement may be addressed through habeas] . . . ." *Id.* "[We] do not attempt to circumscribe the reach of habeas relief . . . [b]y rejecting [the petitioner's] claims, [and] we do not suggest the proper resolution of other habeas claims[.]" *Id.* at 1075 & n.15; *see also Ziglar v. Abbasi*, 582 U.S. 120, 144–45 (2017) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement, as distinct from the fact or length of

after the first stroke, "staff checked his blood pressure and administered an EKG but provided no further treatment." *Id.* Petitioner had to wait two days to be transported to a hospital for a CT scan. *Id.* It is also undisputed that, "[a]fter the second [stroke], . . . he waited two days to see a nurse, was given no wound care supplies, and was forced to cover an open wound with shrink wrap from his dinner packaging." *Id.* Doctor Kate Sugarman, a medical volunteer with New York Lawyers for the Public Interest's ("NYLPI's") Medical Providers Network, reviewed California City's records and concluded that petitioner's case "is the most egregious case of delayed care for life threatening medical conditions that I have seen to date." Doc. 15-4, Sugarman Decl. at ¶ 8.

It is also undisputed that petitioner "requested evaluation of a growing throat mass that is making it increasingly difficult for him to speak and swallow, but California City staff told him that he would have to wait months." Doc. 1 at ¶ 41; *see* Doc. 10. Petitioner had still not had an appointment with an oncologist or neurologist as of the filing of the petition. Doc. 1 at ¶ 41. Petitioner was taken to an otolaryngologist on May 27, 2026, and the otolaryngologist determined that he needed an emergency CT scan and biopsy. Doc. 13 at 2. The throat mass has become so large that "he cannot open his mouth and chew," and he "has begun experiencing a burning pain when touching his throat mass[] and bleeding from his nose." *Id.*

In addition, respondents do not dispute petitioner's assertion that "[h]e has repeatedly been deprived of access to his prescribed inhaler for COPD, which at one point caused his oxygen levels to drop to 77%—a life-threatening level—requiring emergency hospitalization." Doc. 1 at ¶ 41; *see* Doc. 10. "And he has been denied basic orthopedic accommodations, including a cane

---

confinement.") (quoting *Bell v. Wolfish*, 441 U.S. 520, 526, n.6 (1979)). Following *Pinson*, other courts in this circuit have concluded that a detainee can challenge his conditions of confinement through habeas. In *Doe*, for example, the court reasoned: "For civil detainees like Mr. Doe, the Ninth Circuit has held that conditions of confinement are a relevant factor in determining whether civil detention remains civil rather than punitive (and therefore permissible)." *Doe*, 723 F. Supp. 3d at 691 n.1. "Because a person in punitive civil detention is therefore 'in custody in violation of the Constitution or laws or treaties of the United States,' a petition seeking release from the unlawful detention sounds squarely in habeas." *Sorio v. Hermosillo*, No. 2:25-CV-02492-TL, 2026 WL 413530, at *8 (W.D. Wash. Feb. 13, 2026) (quoting 8 U.S.C. § 2241(c)(3)); *see Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1226–28 (W.D. Wash. 2026) (distinguishing *Pinson*).

and prescribed supportive footwear for his degenerative spinal condition, leaving him in unmanaged pain and at risk of further injury." Doc. 1 at ¶ 41.

Petitioner is also being held in medical solitary confinement in a single-occupant cell without a working shower. Doc. 1 at ¶¶ 36–37. He is forced to bathe himself in the sink in his cell because the exit procedure for leaving his cell is so painful. *Id.* He has had limited contact with his family while detained. Both his father and sister-in-law died while he was detained, and he was not permitted to attend their funerals. *Id.* ¶¶ 27, 75.

These conditions of petitioner's confinement weigh in favor of finding that petitioner's detention violates due process.

**b. Length of Detention and the Government's Contribution to Any Delay**

Petitioner has been detained since September 16, 2025, nearly eleven months. Doc. 1 at ¶ 77. He has been held in solitary confinement since February 1, 2026. *Id.* The conditions of his detention "inform[] the due process consideration of how long is too long." *Doe*, 732 F. Supp. 3d at 1089. "[H]arsh conditions multiply the burden on liberty for any given period." *Id.* Detention "with limited access to medical care, legal assistance, and communications to the outside world is different, for constitutional purposes, from the same amount of time spent in more comfortable accommodations with greater access to services." *Id.* at 1088. Given petitioner's serious medical condition and the circumstances of his confinement, the court finds that the length of petitioner's detention weighs in his favor.

It appears that the government has contributed to the duration of petitioner's detention to some degree. Three months after he was detained, on January 23, 2026, DHS amended the charge of removability to allege that he was convicted of manufacturing phenylacetone, rather than honey oil. Doc. 10-1 at 3. Petitioner argued in his petition that he does not have a conviction for manufacturing phenylacetone and that by charging him as inadmissible based on such an offense, the government has unreasonably delayed his removal proceedings. *See* Doc. 1 at ¶¶ 48, 80. Respondents did not dispute this assertion in their opposition, nor did they provide any evidence that petitioner has been convicted of manufacturing phenylacetone. *See* Doc. 10. Respondents have therefore waived this issue. *See, e.g.*, *Shakur v. Schriro*, 514 F.3d 878, 892

(9th Cir. 2008) (holding party abandons claims by not raising them in opposition to movant's motion); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005). The government's contribution to the delay in petitioner's removal proceedings also weighs to an extent in his favor.[6]

**c. Evidence Supporting the Determination that Detention is Warranted and Whether the Government's Interests Could Be Protected Through Alternatives to Detention**

The third and fourth factors identified in *Doe*—the evidence supporting the determination that detention is warranted to prevent flight risk or community danger, and whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh—weigh heavily in petitioner's favor. He has established roots in the United States, has significant family ties with four U.S. citizen children, and has a strong incentive to appear for his removal proceedings. His criminal convictions, though serious, are over a decade old and resulted in a combined sentence of only 120 days, and since those convictions, petitioner has maintained a clean criminal record. Respondents effectively concede that petitioner does not pose a risk of flight or danger to the community. *See* Doc. 10 at 6.

An immigration judge has also already made this determination. At petitioner's January 23 bond hearing, the immigration judge concluded that he would release petitioner on the statutory minimum bond of $1,500 if he had the authority to do so. Doc. 1-1, Wagner Decl., Ex. E; *see* 8 U.S.C. § 1226(a)(2). The immigration judge reviewed the record, heard testimony from petitioner, acknowledged his prior convictions, and concluded that petitioner was neither a flight risk nor a danger. Doc. 1-1, Wagner Decl., Ex. E. The immigration judge stated: "I spent more time on this than I have on any bond hearing in recent memory." *Id.* "I would grant him bond, and I'm saying that for a reason." *Id.* "If [this case] goes up on appeal and an appellate court

---

[6] Petitioner has also contributed to the duration of his detention by moving to terminate his proceedings and filing applications for relief from removal, but courts have found that it is inappropriate to "'effectively punish' the [petitioner] for choosing to exercise [his] legal right to challenge the Government's case against [him]." *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018).

finds he's eligible for bond, I can tell you right now I would set a $1,500 bond, and I'll say this during a rehearing[.]" *Id.* "Bond is denied not on merits, but on eligibility." *Id.*

All five factors outlined in *Doe v. Becerra* thus weigh in petitioner's favor. On this record, the Court concludes that petitioner's detention is excessive in relation to its purpose, and that he must be released.[7]

## IV. Conclusion and Order

Accordingly,

1. The petition for writ of habeas corpus, Doc. 1, is GRANTED.
2. Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.
3. Respondents are ORDERED to provide petitioner with a copy of this Order upon his release.
4. The Clerk of Court is directed to close this case and enter judgment for petitioner.
5. The Clerk is directed to terminate any remaining motions as moot.
6. The Clerk is directed to serve California City Detention Center with a copy of this Order.

IT IS SO ORDERED.

Dated: August 4, 2026

UNITED STATES DISTRICT JUDGE

[7] Having concluded that petitioner's continued detention violates his substantive due process rights, the Court need not evaluate petitioner's procedural due process claim.